578 A.2d 422

COMMONWEALTH of Pennsylvania

v.

Charles Lamont THOMAS, a/k/a Charles Lamount, Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 18, 1989.

Filed July 11, 1990.

Cuthbert A. Johnson, Pittsburgh, for appellant.

Claire C. Capristo, Asst. Dist. Atty., Pittsburgh, for Com.

Before CAVANAUGH, WIEAND and KELLY, JJ.

KELLY, Judge:

In this case we are called upon to determine whether a second PCRA petition [1] must be reviewed under the standard of *Commonwealth v. Lawson*, 519 Pa. 504, 549 A.2d

1. Although appellant has captioned this petition under the Post Conviction Hearing Act, 42 Pa.C.S.A. 9541 *et seq.*, it is clear that as the petition was brought after the effective date of the Post Conviction Relief Act, 42 Pa.C.S.A. 9541 *et seq.*, April 13, 1988, it should have been captioned under the new act. However, we will construe the petition as if appropriately entitled, and treat it accordingly.

107 (1988), when the second PCRA petition is identical to a first PCRA petition dismissed on grounds of procedural default, except in raising a claim of ineffectiveness with respect to prior PCRA counsel's procedural default. We find that a second petition must be treated as a first petition *nunc pro tunc* in such circumstances, and falls outside the ambit of the restrictive standard for review of second or subsequent PCRA petitions set forth in *Commonwealth v. Lawson, supra.*

We are also called upon to determine whether prior counsel provided ineffective assistance in failing to raise and preserve an objection to a portion of police "course of conduct" hearsay testimony which indicated a third party who did not testify at trial, knew appellant, was present when the offense occurred, and identified appellant as the perpetrator. We agree with appellant that the course of conduct testimony constituted impermissible oblique narrative, that counsel was ineffective in failing to raise and preserve an objection to that evidence, and that counsel's ineffectiveness in this respect was of a type which would undermine one's confidence in the reliability of the verdict. Consequently, we reverse, vacate judgment of sentence, and remand for a new trial.

The following evidence was adduced at trial. Brooker Greene, age 60, testified that on December 14, 1987, at around 8:00 p.m. he experienced car trouble while driving alone in the Hill district of Pittsburgh. About twenty-five minutes after stopping to identify the problem, two young men, whom Mr. Greene did not know, approached the car and offered their assistance. The two strangers worked on Mr. Greene's car for about 30 minutes before the heavier of the two men got into the car and explained that he was going to check "how the brakes were." N.T. 6/23/88 at 24. The heavier man then started it and drove away. The slighter of the two men, who identified himself as Dale Harris, assured Mr. Greene of the return of his car, and waited with Mr. Greene for roughly an hour (until about

10:00 p.m.) before summoning the police. The car was not returned.

The police who responded testified that after arriving at the scene, they questioned both Mr. Greene and Dale Harris, who had remained with Mr. Greene to inform the police of the heavier man's identity after the car was not returned. Harris named appellant as the man who stole Mr. Greene's car, and provided them with an address at which appellant resided. The police later verified this address by speaking to a woman at that residence who identified herself as appellant's mother. Based on this evidence, the police subsequently arrested appellant and charged him with one count of Theft by Unlawful Taking or Disposition, one count of Unauthorized Use of an Automobile and one count of Criminal Mischief.

At trial, Mr. Greene positively identified appellant as the man who stole his car.[2] Dale Harris did not testify. The jury found appellant guilty of Theft by Unlawful Taking and Unauthorized Use of an Automobile. Post-trial motions were argued and denied. Appellant was sentenced to 2½ to 7 years incarceration. No direct appeal from the judgment of sentence was filed.

Appellant, thereafter, filed a PCRA petition *pro se*. After appointing new counsel to represent appellant, the court denied his petition for relief. Although notice of appeal from this denial was filed, counsel for appellant failed to file briefs in support of the appeal. Consequently, this Court dismissed that appeal, without prejudice.

Finally, after appointment of third counsel, appellant filed a second petition for post conviction relief, identical in all respects to his first. Finding no distinction in the subsequent petition, the lower court denied this petition on the same grounds as the first. An appeal of that order is now

2. The record establishes that Mr. Greene had not seen the perpetrator before or after the crime, until he viewed and identified the appellant as the perpetrator at trial. *See* N.T. 6/23/88 at 48–50.

before us.[3]

■  Initially we must determine the appropriate standard for reviewing this claim. Although this is technically an appeal from appellant's *second* petition for post-conviction relief, under the peculiar circumstances from which this appeal arises, the standard for reviewing ineffective assistance of counsel claims espoused in *Commonwealth v. Lawson*, 519 Pa. 504, 549 A.2d 107 (1988) does not apply. In *Lawson*, after observing that "a second post-conviction appeal should be the *exception*, not, as is presently the case, the *rule*," 549 A.2d at 110–11, our Supreme Court held,

> Today we have reached a consensus which proved so elusive in *Commonwealth v. Alexander*, [495 Pa. 26, 432 A.2d 182 (1981) ] and *Commonwealth v. Watlington*, [491 Pa. 241, 420 A.2d 431 (1980) ]. This accommodation has been reached by the realization that we cannot permit our continuing concern for assuring that persons charged with crime receive competent representation in their defense to be exploited as a ploy to destroy the finality of judgments fairly reached. We therefore conclude that a *second* or any *subsequent post-conviction request for*

**3.** The Commonwealth urges, as the lower court found, that appellant has knowingly and understandingly waived his right to bring the instant claim of post-conviction relief because appellant failed to take a *direct* appeal following denial of post-verdict relief, and has not alleged that he communicated desire for a direct appeal which was frustrated or ignored by his counsel. Appellant's failure to file direct appeal or to assert a frustrated effort to do so, however, is of no consequence. "The law is clear that a claim of ineffectiveness must be raised at the earliest stage in the proceedings at which counsel whose effectiveness is being challenged no longer represents appellant." *Commonwealth v. Yabor*, 376 Pa.Super. 356, 368, 546 A.2d 67, 73 (1988) (*quoting Commonwealth v. House*, 371 Pa.Super. 23, 27, 537 A.2d 361, 363 (1988); *see also Commonwealth v. Cargo*, 498 Pa. 5, 19, 444 A.2d 639, 646 (1982). The instant claim was brought at appellant's first *counseled* opportunity. This is all that is necessary to timely preserve for review an ineffective assistance claim. *See Commonwealth v. Hubbard*, 472 Pa. 259, 276–77 n. 6, 372 A.2d 687, 695 n. 6 (1977); *Commonwealth v. Strachan*, 460 Pa. 407, 410, 333 A.2d 790, 791 (1975); *Commonwealth v. Colpo*, 367 Pa.Super. 223, 225, 532 A.2d 870, 871 (1987); *Commonwealth v. Evans*, 343 Pa.Super. 118, 122 n. 2, 494 A.2d 383, 385 n. 2 (1985); *Commonwealth v. Johnson*, 309 Pa.Super. 117, 119 n. 2, 454 A.2d 1111, 1112 n. 2 (1983).

> *relief* will not be entertained unless a strong prima facie showing is offered to demonstrate that a miscarriage of justice may have occurred.

*Id.* at 111–12 (emphasis added); *Commonwealth v. Hagood,* 516 Pa. 340, 532 A.2d 424 (1987); *see also Commonwealth v. Miller,* 375 Pa.Super. 437, 441–42, 544 A.2d 1000, 1001–1003 (1988) (*per* Kelly, J.; discussing *Hagood, supra; Alexander, supra;* and *Waltington, supra* ).

Here, unlike in *Lawson,* appellant's *first* request was denied, due to counsel's procedural default, without prejudice. ` Appellant, in his second petition for relief, merely seeks review of the merits of the exact claim asserted in his first. The purpose for applying the *Lawson* standard, *i.e.* to discourage the exploitation of the post-conviction review process, is not furthered here. Moreover, to apply a more rigorous standard to an appeal following dismissal based on counsel's failure to file timely briefs would be inconsistent with the reasoning of holdings in this Court which provide *nunc pro tunc* relief where procedural non-compliance was due to counsel's default. *See Commonwealth v. Ciotto,* 382 Pa.Super. 458, 555 A.2d 930 (1989) (failure to file briefs constitutes *per se* ineffectiveness); *Commonwealth v. Hoyman,* 385 Pa.Super. 439, 561 A.2d 756 (1989) (same). *Cf. Commonwealth v. Albert,* 522 Pa. 331, 334, 561 A.2d 736, 738 (1989) ("Where counsel's representation is deemed to be inadequate, it is inappropriate to allow the proceedings in which it was rendered to be binding on the defendant's rights."). Hence, we find the *Lawson* standard inapplicable herein.

The appropriate standard of review here is the same as that of claims asserting ineffective assistance in initial post-conviction relief attempts. In this regard, the PCRA provides in pertinent part:

> (a) **General rule.**—To be eligible for relief under this subchapter, a person must plead and prove by a preponderance of the evidence all of the following:
>
> \* \* \* \* \* \*

(2) That the conviction or sentence resulted from one or more of the following:

(ii) Ineffective assistance of counsel *which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.*

42 Pa.C.S.A. § 9543(a). (Emphasis added). The emphasized portion of the PCRA provision adds an additional requirement not present in its predecessor provision in the PCHA. Under the PCRA a petitioner *must not only* establish ineffective assistance of counsel, petitioner *must also* establish that the ineffectiveness was of a type "which in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilty or innocence could have taken place." This is a substantial restriction of the grounds for post-conviction collateral relief in Pennsylvania.

The new statute mandates a two step analysis. First, we must apply the well-settled three prong standard for ineffectiveness to determine if counsel was ineffective. Second, we must determine if any ineffectiveness proven so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.

The standard for determining if counsel was ineffective is well settled:

In order to establish a claim of ineffectiveness, appellant must establish that: by act or omission counsel was arguably ineffective; counsel's act or omission could not have had a reasonable basis designed to effectuate appellant's interests; and appellant was prejudiced by the act or omission in that but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different. *Commonwealth v. Pierce,* 515 Pa. 153 [157–158], 527 A.2d 973, 975–76 (1987); *see also Commonwealth v. Johnson,* 516 Pa. 407, [413], 532 A.2d 796, 799 (1987). ("The standard of review is that there must be a reasonable probability that but for coun-

sel's unprofessional errors, the result of the trial would have been different.").

*Commonwealth v. Petras*, 368 Pa.Super. 372, 376, 534 A.2d 483, 485 (1987); *see also Commonwealth v. Swavely*, 382 Pa.Super. 59, 64, 554 A.2d 946, 948 (1989); *Commonwealth v. Davis*, 381 Pa.Super. 483, 491, 554 A.2d 104, 110 (1989); *Commonwealth v. Carelli*, 377 Pa.Super. 117, 125, 546 A.2d 1185, 1188 (1988), *allocatur denied*, 521 Pa. 609, 557 A.2d 341 (1989).

Appellant contends that trial counsel was ineffective for failing to object to and preserve through post-trial motions, the Commonwealth's introduction of certain alleged hearsay statements. The testimony appellant challenges was offered by the Commonwealth during direct examination of Officer Greiner, one of two police officers involved in the investigation of the stolen car. Appellant argues that although the testimony adduced from Officer Greiner was largely used merely to explain his "course of conduct" during the investigation, the Commonwealth also adduced highly incriminating hearsay testimony which went beyond mere explanation of the officers' course of conduct, to wit:

Q. Now, you spoke that evening with ... a gentleman named Dale Harris?

A. Correct.

Q. Now, you can't tell us what Dale Harris said. What did you do, what action did you take as a result of the conversation you had with Dale Harris?

A. Information that I received from Dale Harris.

Q. Be careful not to tell us what that information was.
   MR. SWEM: Objection. I ask he ask question. [sic]. If there is an answer that is objectionable, I will make it. He says repeatedly that a witness can or cannot do. [sic].
   THE COURT: Well, I suppose the District Attorney is trying to be super cautious about eliminating the possibility for inadmissible information, hearsay testimony to be heard by the jury. Of course, you are right. You are attentive and you are ready, willing,

and able to object when you think it is proper. Go ahead.

MR. MERRICK: What did Dale Harris tell you?

MR. SWEM: Objection.

THE COURT: Sustained.

BY MR. MERRICK:

Q. After you had a conversation with Dale Harris, what did you do?

A. I wrote it down while I was gathering the information.

Q. *And, as a result of the conversation with Dale Harris, what was your next action?*

A. I spoke with Mr. Greene, gathered his information.

Q. *With information from both of these individuals, what did you do?*

A. *I wrote an affidavit for arrest warrant for [defendant].*

Q. Now, that evening before you got, before you actually had written out the warrant, when you left it, when you left the dwelling, St. Clair Village, did you do something that evening *as a result of the conversation with Dale Harris?*

A. Yes I did two things. No. 1, I put a description of the automobile out on the air, and the license plate number. The plate was, I do believe, or the license plate number from the owner's card. I made a general broadcast on Channel 1, Channel 2. Channel 2 is South Side. And West End area. Channel 1 is at that time the Hill District. 3 District, 4 and 5 District. After I put that broadcast out on the radio, I received—

Q. *Don't tell us what you received.*

Now, other than putting it out on the radio, *did you not also visit a residence that evening?*

A. Yes, I did.

Q. What was the address?

A. 21—2521—excuse me. I am sorry. 2194 Elmore Square.

Q. Did you speak with someone there?

A. Yes, I did.

Q. Describe the person you spoke with. Describe her.

A. She was an older black female in her, I believe late 40's, early 50's.

Q. *Identify herself?*

A. *Yes, she did.*

Q. Her name?

A. Her name is—

MR. SWEM: *Objection.*

THE COURT: *Overruled.*

BY MR. MERRICK:

Q. *Her name?*

A. *Her name is Mrs. Thomas.*

Q. *Did she have a relationship to the accused?*

A. *Her son.*

N.T. 6/13/88 at 63–66 (emphasis added).

■ Essentially, appellant argues that the Commonwealth, through this testimony, introduced statements in the form of oblique narratives to prove that Dale Harris, who knew and could reliably identify appellant, accused appellant of committing the crime. As Harris himself was not available for cross examination, appellant claims he was prejudiced by not having the opportunity to confront and cross-examine his accuser. We are constrained to agree.

Recently, in *Commonwealth v. Palsa,* 521 Pa. 113, 555 A.2d 808 (1989), our Supreme Court recently reviewed a similar challenge to testimony which the prosecution claimed was justifiably introduced to explain police conduct. There, the Supreme Court observed,

It is, of course, well established that certain out-of-court statements offered to explain a course of police conduct are admissible. Such statements do not constitute hearsay since they are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which police acted. *Commonwealth v. Sneed,* 514 Pa. 597, 606–07, 526 A.2d 749, 754

(1987); *Commonwealth v. Cruz*, 489 Pa. 559, 565, 414 A.2d 1032 (1980) (police responded to radio call reporting a disturbance); *Commonwealth v. Sampson*, 454 Pa. 215, 219, 311 A.2d 624, 626 (1973) (police declined to arrest an individual who asserted his innocence); *Commonwealth v. Tselepis*, 198 Pa.Super. 449, 452, 181 A.2d 710, 712 (1962) (police acted upon informant's tip that defendant was conducting a lottery. *See also Commonwealth v. Underwood*, 347 Pa.Super. 256, 261, 500 A.2d 820, 822 (1985) ("This Court has repeatedly upheld the introduction of out-of-court statements for the purpose of showing that based on information contained in the statements, the police followed a certain course of conduct that led to the defendant's arrest.").

Nevertheless, it cannot be said that every out-of-court statement having bearing upon subsequent police conduct is to be admitted, for there is great risk that, despite cautionary jury instructions, certain types of statements will be considered by the jury as substantive evidence of guilt. Further, the police conduct rule does not open the door to unbounded admission of testimony, for such would nullify an accused's right to cross-examine and confront the witnesses against him.

*Commonwealth v. Palsa, supra,* 555 A.2d at 811, 812 (footnotes omitted). The *Palsa* court, after noting that the challenged statements were likely to be understood by the jury as themselves proving the elements of the crime for which the defendant was charged, concluded,

In this case, the police easily could have explained the course of their conduct pertaining to the investigation and arrest of appellant ... without resorting to the full and explicit statements given by [the informant]. It is the prosecutor's duty to avoid the introduction of out-of-court statements that go beyond what is reasonably necessary to explain police conduct.... The statements could have been attenuated in other ways, too, to lessen their prejudicial impact. Thus, *an adequate explanation for police conduct could have been provided, while minimizing*

*the introduction of statements made by a person who was not under oath and who was not available for cross-examination.*

*Palsa, supra,* 555 A.2d at 812 (emphasis added).

Applying this rationale instantly, we find that the testimony challenged herein constitutes inadmissible hearsay. Here, the fact that the crime had been committed was not questioned; the sole issue at trial was one of identity. The prosecution sought to buttress the in court identification of appellant made by the victim (who had never seen appellant before the incident in question) with another, far more reliable *out of court* identification made by a person who knew the name of the individual, with whom the person had been with when they happened upon the victim's disabled car, which the individual fixed and then promptly stole. Though couched in terms of course of conduct testimony ostensibly in compliance with the hearsay rule, the challenged testimony conveyed the impression that Dale Harris identified appellant as the perpetrator and constituted impermissible "oblique narrative." *See Commonwealth v. Farris,* 251 Pa.Super. 277, 380 A.2d 486 (1977).

In some previous cases, course of conduct hearsay evidence was permitted despite similarity to impermissible oblique narrative when there was need to explain the course of conduct, and the potential prejudicial impact of the limited oblique narrative type hearsay involved was minimal. In *Commonwealth v. Underwood, supra,* the Commonwealth was permitted to explain the course of conduct by the police by disclosing that an *unidentified bystander* had implicated the defendant. Similarly, in *Commonwealth v. Carelli,* 377 Pa.Super. 117, 132, 546 A.2d 1185, 1198 (1988), the Commonwealth was permitted to explain the course of conduct by the police by disclosing that an anonymous tip had implicated the defendant. Because the source of the oblique narrative type hearsay was anonymous in both cases, the juries in those cases would be unlikely to accord inappropriate weight to the hearsay statements derived from those anonymous persons related during course

of conduct testimony. In both cases, the out of court identification was essentially harmless, and *was offered merely to fill a gap in the narrative, rather than to buttress the proof of one of the critical elements of the offense.*

Here, on the other hand, the manner in which the evidence was presented focused impermissibly on its oblique narrative aspect, and in fact emphasized the reliability of an out of court identification of a witness who was not presented to testify and to be cross-examined in this case. Given that the "Good Samaritan gone bad" had arrived with Dale Harris, a jury might understandably attach special relevance to Dale Harris' identification of appellant as the thief, especially in light of the victim's partially impeached identification of appellant. While either identification might be accepted or rejected separately, together the identification of appellant by the victim *and Dale Harris* corroborated each other and considerably enhanced the case for accepting the identification of appellant as the thief. The introduction of statements allegedly made by appellant's mother at the address Harris gave the police as that of his companion (the perpetrator of the offense) would similarly be seen to corroborate Harris' out-of-court accusation against appellant.

While it may have been necessary to explain to the jury why the police arrested appellant and not someone else, the combined effect of the introduction of statements allegedly made by both Harris and appellant's mother, in the context in which they were offered, was to provide proof of appellant's guilt through a person not under oath, nor available for cross-examination. Notwithstanding the Commonwealth's professed intent to comply with evidentiary mandates, we find that the statements were not so attenuated as to sufficiently limit their prejudicial impact. *See Palsa, supra.* As such, we conclude they constituted inadmissible hearsay, and should have been excluded. *See also Commonwealth v. Thomas,* 372 Pa.Super. 349, 539 A.2d 829 (1988); *Commonwealth v. Whiting,* 358 Pa.Super. 465, 517

A.2d 1327 (1986); *Commonwealth v. Parks,* 273 Pa.Super. 506, 417 A.2d 1163 (1979).

█ The inadmissible hearsay was objected to by counsel at trial, but the objections were not preserved for appeal through appropriate post-verdict motions. No plausible tactical basis *could* exist for the waiver of such a challenge by counsel; consequently, we find it unnecessary to remand for a hearing as to whether a reasonable basis existed to pursue the course pursued by counsel. *Cf. Commonwealth v. Petras, supra,* 534 A.2d at 485 (ordinarily the Commonwealth is entitled to an evidentiary hearing to rebut an arguable assertion of ineffective assistance when no hearing on the issue was conducted in the trial court).

Finally, while we in no way suggest that the evidence against appellant was insufficient to sustain the verdict, we have no hesitation in concluding that the improper oblique narrative evidence was prejudicial in this case. Without the improper oblique narrative evidence, the jury might very well have found reasonable doubt in this case.

No finger prints or other demonstrative evidence was made a part of the prosecution's case. The victim did not previously identify appellant either from an array of photographs or in a lineup. The sole admissible identification evidence was the victim's *in court* identification of appellant while seated at defense table in the front of the court and next to defense counsel. Further, although the victim testified that he had ample opportunity to view the appellant while working on the car, the victim's recollection of, or ability to perceive, the subject events was called into question by several seemingly inconsistent or implausible statements he made at trial. *See e.g.,* N.T. 6/23/88 at 42–45 (the victim's steadfast claim of day light at 8:30 p.m. in Pittsburgh, Pennsylvania, in December).

We find error, the absence of a reasonable basis designed to promote appellant's interests for the conduct, and actual prejudice to the accused. Thus, counsel was in fact ineffective. *See Commonwealth v. Petras, supra.*

We still must determine whether the ineffectiveness was of a type which would undermine one's confidence in the verdict. We have no doubts on this point. A verdict *based in any material respect* on inadmissible hearsay is unreliable, because inadmissible hearsay is by definition unreliable. As noted above, we find that the verdict here quite likely was based in a material respect on the improper oblique narrative evidence. Hence, we find that counsel's ineffectiveness in failing to properly preserve an objection to the improper oblique narrative evidence in this case was of a type which undermines confidence in the verdict. Accordingly, we find that appellant is entitled to a new trial.[4]

Judgment of sentence is Reversed, and a New Trial Granted. Jurisdiction is relinquished.

WIEAND, J., concurs in the result.

---

4. The question of whether a counsel's ineffectiveness "undermines the truth determining process" is *similar* in many cases to the question of prejudice in determining whether counsel was ineffective. However, there are a wide variety of ineffectiveness claims which involve *prejudicial* errors which have nothing to do with the *reliability* of the guilt determination. Ineffectiveness findings regarding Rule 1100 claims, Fourth Amendment suppression claims, and certain *Miranda* claims may demonstrate the distinction envisioned by our legislature in imposing the new restriction. We leave such distinctions to be drawn on a case by case basis as such cases arise.