580 A.2d 352

**COMMONWEALTH of Pennsylvania**

v.

**Kendall PITTS, Appellant.**

Superior Court of Pennsylvania.

Submitted June 25, 1990.

Filed Aug. 30, 1990.

H. David Rothman, Pittsburgh, for appellant.

Claire C. Capristo and Maria V. Copetas, Asst. Dist. Attys., Pittsburgh, for Com.

Before CIRILLO, President Judge, and POPOVICH and HESTER, JJ.

HESTER, Judge:

This is an appeal from the February 15, 1990 order denying appellant relief without a hearing under the Post–Conviction Relief Act. Since we conclude there there is no dispute that the issues raised in this appeal are not cognizable under the PCRA, we affirm.

Resolution of the issues raised in this appeal requires a comprehensive review of the evidence introduced at the trial of appellant, Kendall Pitts. Appellant was convicted by a

jury on June 5, 1987, of carrying an unlicensed gun and of first degree murder in connection with the shooting death of nineteen-year-old Derrick Mahaffey on June 22, 1986, in a public housing development in Pittsburgh known as the Garfield Projects. Appellant shot Derrick from the automobile that appellant was driving. Five eyewitnesses testified at trial, including the two passengers in appellant's car.

Sylvia Johnson, one eyewitness to the shooting, testified as follows. She lives across from the apartment of the victim's grandmother and was the victim's best friend. She had dinner with Derrick and his grandmother on the evening of June 22, 1986. After dinner, she, the victim, Sylvia's sister, and Sylvia's niece went outside to sit on lawn chairs and talk. Approximately five minutes later, she noticed an automobile drive past and then back up. The car was a small, blue station wagon, and one of the occupants whom Sylvia could not see asked Derrick his name and accused him of "making faces" at him. Notes of Testimony, 6/2–5/87, at 47. The victim denied that he had made faces and stood up from his chair. Sylvia said that Derrick was shot immediately. She heard three shots, in quick succession. Sylvia panicked, grabbed her young niece, and ran.

Sylvia was firm that she heard three shots and that all three were fired immediately after the victim stood up. Although she ran as soon as she heard the first shot, Sylvia soon turned to look at the victim. She saw the victim walk toward the car, lean on it, and then place his hands inside the driver's window. The car drove away slowly. Sylvia stated that no further shots were fired either while the victim was approaching the car or while he was at the car. After Sylvia saw the car drive away, she returned to the victim, who collapsed in her arms.

Sharee Johnson, Sylvia's sister, was thirteen when the shooting occurred. At trial, she acknowledged that she was more concerned with her own well-being than observing the events of the shooting and that she ran as soon as the first shot was fired. Although she confirmed her sister's version

of events prior to the shooting, her testimony was that one shot was fired at the victim when he stood up and that two shots were fired while he was leaning against the car.

A third eyewitness, Charles Woodward, who also lived in the Garfield Projects, observed the shooting from across the street. He did not hear the verbal exchange between the victim and the driver of the car, but he did not flee or turn his head when the shots were fired. He testified that three shots were fired in rapid succession as soon as the victim stood up from his chair. He stated that the victim did not lean against the light blue station wagon, which had driven away, but instead, leaned against a car parked along the street. Woodward's unshaken testimony was that Derrick was shot three times immediately after he stood up and before he started to walk toward the car. Woodward did not see the occupants of the blue station wagon, which drove away after the shooting.

Derrick Webb testified as follows. He was one of the two passengers in the car and is on friendly terms with both the other passenger, Todd Blackman, and appellant. Webb was sitting next to appellant and observed him shoot Derrick. Webb also was with appellant during the evening hours prior to the shooting when he and appellant had been driving around and drinking a moderate amount of beer. They picked up Blackman later in the evening, just prior to the shooting. Webb noted that appellant did not mention the victim's name or indicate that he was angry with anyone at any point during the evening.

When the three men started driving through the Garfield Projects, they drove past the victim and his friends. Webb heard someone "scream out," and appellant backed up his car, stopping in front of the victim. *Id.* at 162. Webb said that appellant then asked the victim, "What's Up?" several times. *Id.* The victim stood up and started to walk toward the car, and appellant shot him three times. The victim kept walking toward the car, which drove away. Webb testified that the victim never had his hands inside appellant's car. When asked by the Commonwealth whether

there was a motive for the shooting, Webb responded that he observed absolutely no reason for appellant to shoot Derrick. *Id.* at 171.

Todd Blackman also testified for the Commonwealth. He is appellant's first cousin and was raised as his brother. Blackman also knew the victim and Sylvia Johnson. Blackman confirmed that he, appellant, and Webb were driving through the Garfield Projects and drove past Derrick. He also heard the gun fired three times which he described as occurring when Derrick was "coming toward the car." *Id.* at 230.

Aletta Curry was appellant's girlfriend, and she testified that approximately two weeks after the shooting, appellant told her that he shot Derrick because the "guy was talking stuff on him; and he didn't like what he was saying, so he shot him...." *Id.* at 263.

Both Sylvia Johnson and Derrick Webb testified that there was no weapon in Derrick Mahaffey's hands at any point during the exchange between appellant and Mahaffey. It also was established at trial that appellant was not licensed to carry a gun at the time of the shooting and that he owned a light blue station wagon. Derrick died of one gunshot wound which penetrated his heart.

We summarize the evidence as follows. All of the eyewitnesses agreed that the first shot was fired as soon as the victim stood up and started to walk toward the car, which had backed up to come parallel to the victim. Four witnesses, including appellant's cousin, said all three were fired as soon as the victim stood up. Only the young witness, who admittedly was not paying attention, said that the other two shots were fired when the victim was leaning against a car. There was a conflict about which car the victim leaned against, but the two witnesses who did not turn away agreed that it was not appellant's car. The victim was unarmed, and the motive, established by appellant's own admission as well as eyewitness testimony, was that the victim called appellant names. The fact that appellant pulled the trigger is established by Webb and by appellant's

statements to his girlfriend. Although appellant's cousin did not say that appellant pulled the trigger, the cousin admitted all of the other relevant facts and did *not* state that either Webb or he shot the gun. Succinctly, the evidence offered by five eyewitnesses, including appellant's cousin, refutes any inference that the appellant acted in self-defense.

The jury returned a verdict of guilty of first degree murder. Appellant was sentenced to life imprisonment on August 28, 1987. He filed a direct appeal, alleging that trial counsel was ineffective for failing to impeach Webb with a prior conviction and for failing to object to the trial court's instructions. Appellant was represented by privately-retained counsel during trial and by the public defender's officer during his direct appeal. On appeal, we remanded for a determination as to whether Webb was impeachable as alleged and rejected appellant's allegation that jury instructions were improper. Following a hearing, the trial court determined that Webb was not impeachable with the prior conviction since the conviction was not for a crime involving *crimen falsi.*

On May 5, 1989, appellant filed a petition for relief under the PCRA, which was denied without a hearing. This appeal followed. Appellant contends that he is entitled to a hearing on his PCRA petition which contains allegations that trial counsel was ineffective for failing 1) to call him to testify on his own behalf since he was the only witness who could have established that the victim was the aggressor in the episode; 2) to investigate and present the defense of voluntary intoxication and drug ingestion to negate the specific intent to kill; and 3) seek a severance with respect to the charge of carrying an unlicensed weapon.

■ This is appellant's first PCRA petition, and he strenuously argues that prior appellate counsel was ineffective for failing to raise these issues during direct appeal and that the decision not to pursue the issues was *not* a tactical decision. We therefore conclude that the issues are not waived. *See Commonwealth v. Hanes*, 397 Pa.Super. 38,

579 A.2d 920 (1990); *Commonwealth v. Ryan,* 394 Pa.Super. 373, 575 A.2d 949 (1990); *Commonwealth v. Velasquez,* 387 Pa.Super. 238, 563 A.2d 1273 (1989). *See also Commonwealth v. Weinder,* 395 Pa.Super. 608, 613 n. 2, 577 A.2d 1364, 1367 n. 2 (1990). However, we also conclude that the issues are not cognizable under the PCRA as a matter of law. Ineffective assistance of counsel is cognizable under the PCRA only where it undermined the truth-determining process so that no *reliable* adjudication of guilt could have taken place. 42 Pa.C.S. § 9543(a)(2)(ii); *Commonwealth v. Thomas,* 396 Pa.Super. 92, 578 A.2d 422 (1990).

■ As to counsel's failure to seek severance, this allegation is not cognizable as stated. This follows because severance of two charges to which the defendant obviously is guilty where both charges stem from the same criminal incident does not implicate the reliability of the truth-determining process. Accordingly, this allegation is not cognizable on its face.

Turning to the other two allegations of trial counsel's ineffectiveness, we conclude that under the facts, the allegations of ineffectiveness raised in this appeal did not undermine reliability of the truth-determining process as a matter of law. Appellant's guilt of first degree murder is established conclusively by the record, which demonstrates the falsehood of the two issues allegedly foregone by counsel.

■ As to appellant's claim that he would have testified that the victim was the aggressor, we note the following. There were five eyewitnesses to this crime, and no one's testimony contains a scintilla of support for the position that the victim was the aggressor. Appellant himself admitted his motive for shooting the young man was that he called appellant a name, which motive was confirmed by Webb and Sylvia Johnson. In addition, all eyewitness testimony agreed as to two key facts: appellant had to back up his car to come parallel with the victim and the first shot

was fired *before* the unarmed victim stepped toward the car in which appellant easily could have driven away in order to avoid any conflict.

Since the record establishes conclusively that the victim was not the aggressor, trial counsel's alleged ineffectiveness in failing to allow appellant to testify to the contrary did not undermine the *reliability* of the truth-determining process at appellant's trial. This follows because such testimony would have been a fabrication. *See Commonwealth v. Perdue,* 387 Pa.Super. 473, 564 A.2d 489 (1989) (improper cross-examination did not undermine truth-determining process); *Commonwealth v. Blackwell,* 384 Pa.Super. 251, 558 A.2d 107 (1989) (while some pretrial identification procedures may undermine truth-determining process, procedure at issue did not). *Compare Commonwealth v. Thomas, supra* (trial counsel was ineffective for failing to preserve objection to patently inadmissible hearsay and this implicated reliability of truth-determining process in that hearsay is inherently unreliable and hearsay at issue was a key piece of evidence establishing defendant's guilt); *Commonwealth v. Weinder, supra* (where alibi evidence was strong and where alibi instructions were incorrect, reliability of truth-determining process was implicated by improper instructions).

■ The record also establishes that appellant did not have a defense of voluntary intoxication. He confessed to his girlfriend that he shot the victim because the victim called him a name (not because he was intoxicated and did not mean to shoot him). Further, Derrick Webb was with appellant the entire evening prior to the shooting and testified about the level of appellant's consumption of alcohol. It was not sufficient to negate specific intent to kill.

In conclusion, the PCRA does not provide relief on the basis of allegations that trial counsel was ineffective for failing to present defenses which the record establishes are false. Appellant does not level an attack on the reliability of the evidence presented against him or the fairness of his trial. Instead, he contends that trial counsel should have

taken actions which are offensive to the truth-determining process. Since the purpose of the PCRA is to prevent a fundamentally unfair conviction, *Commonwealth v. Weinder, supra; Commonwealth v. Velasquez, supra,* and since appellant's allegations do not raise the inference that his conviction is unfair, we conclude that appellant's allegations are not cognizable. In the present case, there are no genuine issues of material fact that appellant is not entitled to relief under the PCRA. Accordingly, we conclude that the PCRA court correctly dismissed the petition without a hearing. *See* Pa.R.Crim.P. 1507(a), *Commonwealth v. Ryan, supra.*

Order affirmed.