J-S04015-15

2015 PA Super 99

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOSE ALEJANDRO STULTZ, | |
| Appellant | No. 817 MDA 2014 |

Appeal from the PCRA Order May 2, 2014
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000700-2010

BEFORE:  BOWES, ALLEN, and STRASSBURGER,[*] JJ.

OPINION BY BOWES, J.:                                      **FILED APRIL 28, 2015**

Jose Alejandro Stultz, *a/k/a*, David Brown, appeals *pro se* from the denial of his first petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

At approximately 3:15 a.m., on February 14, 2010, Officer Benjamin Lauver witnessed Appellant driving the wrong way on Ninth Street, a one-way street in Lebanon City, Lebanon County.  Officer Lauver turned his vehicle around and activated his lights and siren and began to pursue Appellant's car.  Appellant did not immediately pull over, driving approximately forty miles per hour ("mph") in a twenty-five mph zone, but eventually came to a stop at a red light.  Officer Lauver reported that

---

[*]  Retired Senior Judge assigned to the Superior Court.

Appellant's vehicle never left his sight. Upon encountering Appellant, Officer Lauver placed him under arrest for fleeing and detected the odor of alcohol emanating from Appellant. Appellant was transported to a hospital for blood testing, which revealed a blood alcohol content ("BAC") of .134 percent. In addition, while at the hospital, the officer had Appellant perform field sobriety tests, which Appellant failed. A search of Appellant's car at the scene led to the discovery of heroin and suboxone.

The Commonwealth charged Appellant with a felony of the third degree fleeing or attempting to elude a police officer,[1] two counts of driving under the influence ("DUI") of alcohol, and four summary traffic offenses[2] as well as violations of the Controlled Substance, Drug, Device, and Cosmetic Act. Appellant filed a motion to suppress, challenging the validity of the traffic stop and the search of his vehicle. The court granted in part and denied in part that motion. It suppressed several statements made by Appellant to police as well as the drugs located in his vehicle. However, it upheld the traffic stop and the blood test results. Thereafter, the Commonwealth withdrew the drug charges.

_____

[1] The fleeing charge was graded as a felony based on Appellant fleeing while committing a DUI violation. **See** 75 Pa.C.S. § 3733(a.2)(2)(i).

[2] 75 Pa.C.S. § 3308 (driving on one-way roadway); 75 Pa.C.S. § 3736 (reckless driving); 75 Pa.C.S. 4703 (operating vehicle without certificate of inspection); 75 Pa.C.S. § 3323 (failure to stop or yield at stop or yield sign).

Appellant proceeded to a jury trial on June 7, 2011. The jury found Appellant guilty of the fleeing while DUI count. The court adjudicated Appellant guilty of the DUI and summary offenses. Thereafter, the court sentenced Appellant on July 27, 2011, to a sentence of one to five years imprisonment for the fleeing charge. The court sentenced Appellant on one of the DUI charges to a concurrent sentence of forty-eight hours to six months incarceration. The other DUI charge merged.

Appellant filed a timely post-sentence motion, which the court denied. A timely direct appeal ensued. Appellant challenged the trial court's denial of his suppression motion, the sufficiency of the evidence with respect to the fleeing count, a jury instruction, and the weight of the evidence. We affirmed on December 11, 2012. *Commonwealth v. Stultz*, 64 A.3d 16 (Pa.Super. 2012). Appellant did not seek allowance of appeal with our Supreme Court but filed the underlying PCRA petition on January 28, 2013.

The court appointed counsel filed an amended petition reiterating Appellant's claims. However, at Appellant's request and after conducting the requisite colloquy, the PCRA court permitted him to continue *pro se*. The PCRA court conducted an evidentiary hearing. Following the hearing, the court denied Appellant's petition on May 2, 2014, and issued an opinion in support thereof. This timely appeal followed. The PCRA court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the PCRA court indicated that the reasons for its decision could be found in its earlier opinion. The

matter is now ready for this Court's consideration. Appellant raises the following issues for our review.

    I.    Whether the PCRA court erred or abused its discretion in denying Post-Conviction relief on the Claim whethe[r] Petitioner was prosecuted/sentence[d] in a tribunal that lack's [sic] subject matter jurisdiction?

    II.    Whether the PCRA court erred or abused its discretion in denying Post-Conviction relief on the claim of whether counsel was [i]neffective?

    A) Counsel did not object to leading questions to O[f][f]icer Lauver during the preliminary hearing. (Page 16, lines 6-7 and 12-13).

    B) Counsel did not ask for a continuance or [f]ile another [s]uppression [h]earing when collecting discovery [m]aterial [u]ntimely.

    C) Counsel did not argue the suppression hearing properly when [he] should have questioned the arrest not the stop.

    D) Counsel did not ask [f]or an [e]xpert in order to fight the DUI.

    E) Counsel [f]ailure [sic] to challenge the lack of **_Miranda_** warnings of the videotape.

    III.    Whether the PCRA court erred or abused its discretion in denying Petitioner[']s claim that [his] sentence is illegal or unlawful [f]or lack of statutory authorization?

    IV.    Whether the PCRA court violated Appellant[']s [d]ue [p]rocess and [e]qual [p]rotection [c]onstitutionally guaranteed and [p]rotected [r]ight by not allowing adequate time for Appellant to rebuttal [sic] the Commonwealth[']s [b]rief?

Appellant's brief at viii-ix.

In conducting review of a PCRA matter, we consider the record "in the light most favorable to the prevailing party at the PCRA level." ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). Our review is limited to the evidence of record and the factual findings of the PCRA court. ***Id***. This Court will afford "great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record." ***Id****.* Thus, when a PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its decision. ***Id***. Of course, if the issue pertains to a question of law, "our standard of review is *de novo* and our scope of review is plenary." ***Id****.*

We begin by noting that Appellant is no longer eligible for relief with respect to his DUI convictions, having completed serving his sentence for the DUI count for which he was incarcerated. 42 Pa.C.S. § 9543(a)(1)(i); ***Commonwealth v. Turner***, 80 A.3d 754 (Pa. 2013); ***Commonwealth v. Ahlborn***, 699 A.2d 718 (Pa. 1997); ***Commonwealth v. Williams***, 977 A.2d 1174 (Pa.Super. 2009); ***Commonwealth v. Pagan***, 864 A.2d 1231 (Pa.Super. 2004); ***Commonwealth v. Hayes***, 596 A.2d 195 (Pa.Super. 1991) (*en banc*). Thus, to the extent his claims relate solely to the DUI charges, he is not entitled to relief.

Appellant's initial challenge is to the trial court's subject matter jurisdiction. Claims relating to subject matter jurisdiction present questions of law. ***Commonwealth v. Elia***, 83 A.3d 254, 265 (Pa.Super. 2013).

Appellant does not level a subject matter jurisdiction argument on the basis of the location of where his offenses occurred. Rather, Appellant maintains that the trial court lacked jurisdiction based on four separate grounds.[3]

First, Appellant avers that, because the 1968 Pennsylvania Constitution contains no savings clause, he was prosecuted under criminal statutes that were legally inoperative upon ratification of that constitution. Next, Appellant posits that since there is no express state constitutional provision providing authority to enact a state crimes code, the trial court lacked jurisdiction. Third, Appellant asserts that he was prosecuted under criminal rules of procedure and rules of evidence adopted by the judicial branch in violation of the federal constitution pursuant to Article 1, § 1, Article 4, § 4, Article 6, § 2, and Article 7 of that charter.[4] Lastly, Appellant submits that he was prosecuted under statutes that lacked an enacting clause. We address each of Appellant's arguments *seriatim* and find them meritless.

_____

[3] Although similar and identical claims are frequently leveled in PCRA petitions, which are untimely and thereby preclude merits review, *see* ***Commonwealth v. Taylor***, 933 A.2d 1035, 1037-1038 (Pa.Super. 2007), and less frequently raised in timely PCRA matters, no published decision has addressed these positions. Numerous non-binding unpublished decisions have rejected these arguments.

[4] Article 1, § 1 of the federal constitution authorizes legislative power in Congress. Article 4, § 4 is the Republican Form of Government Clause. Article 6, § 2 is the Supremacy Clause, and Article 7 relates to ratification.

Appellant's initial argument appears to be that the Pennsylvania Crimes Code was repealed by the 1968 Pennsylvania Constitution because the amendments to the 1874 Constitution failed to include a savings clause.[5] In essence, Appellant seems to suggest that' because the 1968 Pennsylvania Constitution contained no savings clause, all criminal statutes are null and void. In support, Appellant relies on **Commonwealth v. Bangs**, 393 A.2d 720 (Pa.Super. 1978).

In **Bangs**, we considered the effect of an amendment to the definition of statutory rape to a statutory rape prosecution in progress on the effective date of the amendment. The statutory amendment, which reduced the age of consent from sixteen to fourteen, was enacted without a clause specifically permitting ongoing statutory rape prosecutions to continue under the prior definition. In the relevant footnote, we observed, "With respect to the absence of a saving clause, we note that Pennsylvania is among the handful of states presently without a general saving clause applicable to criminal prosecutions." **Id**. at 721 n.2. Significantly, however, our

---

[5] We note our disapproval of Appellant's attempt to incorporate by reference his filings made below with respect to his subject matter jurisdiction arguments. **Commonwealth v. Briggs**, 12 A.3d 291, 342 (Pa. 2011) ("'[I]ncorporation by reference' is an unacceptable manner of appellate advocacy for the proper presentation of a claim for relief to our Court."); **Commonwealth v. Dodge**, 77 A.3d 1263, 1275 (Pa.Super. 2013) (same).

observation about Pennsylvania's lack of a general savings clause had no bearing upon the outcome of that case.

Contrary to Appellant's inference, we did not conclude that the absence of a general savings clause in our constitution rendered the statutory amendment invalid or divested the legislature of authority to establish criminal offenses. Instead, we reasoned that since the amended definition of statutory rape effectively altered the elements of the offense in order to decriminalize the conduct underlying the appellant's prosecution, the Commonwealth was required to dismiss the pending criminal proceedings. Hence, Appellant's reliance on our *obiter dictum* in **Bangs** in support of his position that the legislature lacks authority to promulgate criminal offenses is inapposite. No relief is due.

Further, it is long-standing law that the creation of a new constitution does not "destroy all preceding systems and start the government anew." Thomas Raeburn White, *Commentaries on the Constitution of Pennsylvania,* at 21 (1907). The Pennsylvania Supreme Court earlier recognized these sound principles. In **County of Allegheny v. Gibson's Son & Co.**, 90 Pa. 397 (1879), the plaintiffs brought an action against the county to recover damages from the destruction of sixty barrels of whiskey that occurred during mob riots in 1877. Statutory law provided for recovery in such a situation. The county argued that the statutory law was inconsistent with the 1874 Pennsylvania Constitution and was not preserved by that

constitution's savings schedule and, therefore, was invalid. In disposing of this position, the High Court opined,

> This argument is based upon the theory that the constitution was not a mere amendment of the constitution of 1838, but a substitution of a new frame of government, and that it was an abrogation of all acts and authorities derived from the old frame unless preserved by the new. It is true this principle of constitutional law was introduced into this state by the constitution of 1777, and the Act of Revival of January 28th of that year: 1 Bioren's Laws 429. The preamble to the constitution recites the rights of the people and the oppressions of the crown, and declares that all allegiance and fealty to the said king and his successors are dissolved and at an end, and all power and authority derived from him ceased in these colonies. It is not difficult to understand why this principle should be asserted in a constitution that was the outgrowth of a revolution and of a total severance of all political relations between the colonies and the mother country. In its application to the present times we must not overlook the fact that the conditions are essentially different. The convention of 1873 was not throwing off the yoke of an oppressor and abrogating laws imposed upon the people by a parliament not in sympathy with their views, and in whose deliberations they had no voice. The convention was simply the people of the state, in a representative capacity, it is true, sitting in judgment upon their own acts, altering and modifying their own constitution to suit the progress of the age, and changing their own laws where deemed essential to the welfare of the state. To such a body so constituted no intention to abrogate all that had gone before can be imputed, unless such intention be clearly expressed.

*Id*. at 405-406. Continuing, the Court reasoned,

> The amendments were radical, yet they were but amendments. A large body of the prior constitution remained. It may be called a new constitution, in the sense in which we call a machine new after it has left the repair shop. Still the fact remains that the constitution is but the prior constitution amended. It matters little how we designate it. The constitution of 1874 was not an abrogation of a former frame of government, as was the constitution of 1777.

- 9 -

*Id*. at 406. We acknowledge that the 1874 Constitution had a general savings schedule, *see Gibson's Son*, *supra*, unlike the current Pennsylvania Constitution. However, it is evident from the rationale expressed in *Gibson's Son* that the 1968 Constitution did not require a savings schedule to preserve prior statutory enactments because of the manner in which it was adopted and ratified.

The 1968 Constitution amended the 1874 Constitution via a limited Constitutional Convention as well as through other amendments.[6] Therefore, the 1874 Constitution was never suspended or completely abrogated. *See also Commonwealth v. Beattie*, 93 Pa. Super 404, 413 (1928) (discussing statutory law, and opining, "The repeal of a statute accompanied by a re-enactment of its terms, or of its substantial provisions in any other form of expression, does not break its continuity; and there is

_____

[6] "The Constitution of 1874 was modified and renumbered by extensive amendments on May 17, 1966, November 8, 1966, and May 16, 1967; and by proclamation of the Governor of July 7, 1967, P.L. 1063, pursuant to the act of August 17, 1965 (P.L.345, No.180). Proposals 1 through 7 to amend the Constitution were recommended by a Constitutional Convention which was called pursuant to the act of March 15, 1967 (P.L.2, No.2). The proposals were approved by the electorate on April 23, 1968. By statute, 1 Pa.C.S. § 906, the Constitution, as amended by referenda of May 17, 1966, November 8, 1966, May 16, 1967, and April 23, 1968, and as numbered by proclamation of the Governor of July 7, 1967, shall be known and may be cited as the Constitution of 1968." http://www.legis.state.pa.us/WU01/LI/LI/CT/HTM/00/00.001..HTM (last visited March 3, 2015); *see also* http://www.duq.edu/academics/gumberg-library/pa-constitution/historical-research/constitutional-convention-1967-1968 (last visited March 4, 2015).

no moment when, whatever words of repeal are employed it can be said to be repealed": Bishop on Statutory Crimes, Ed. 1901, par. 181, p. 99.").

Writing over a century ago, Professor White cogently explained,

Even the original government established in 1776, while in one sense a completely new system, in fact was made up in very large part of existing institutions. The subsequent constitutions have never been construed as abolishing old systems and establishing new, but rather in the light of amendment of existing law. This being so, the constitution is not to be construed as an abrogation of existing laws unless the intent is too clear to be mistaken, but, like amendments to the statute law, is deemed to be operative only for the future.

White, *Commentaries on the Constitution of Pennsylvania,* at 21-22. Consistent with this principle, only those laws that were clearly and unequivocally inconsistent with the substantive changes made between the 1874 constitution and 1968 constitution would be abrogated.

More importantly, the factual predicate for Appellant's claim does not exist. Appellant was sentenced for crimes enacted under the Motor Vehicle Code, not the Crimes Code. The original Motor Vehicle Code became effective July 1, 1977. ***See*** 1976, June 17, P.L. 162, No. 81 § 1, eff. July 1, 1977. Subsequent changes relative to the fleeing and eluding offense necessarily occurred afterward. The 1968 Constitution could not have repealed the Motor Vehicle Code. Similarly, the enactment of the 1968 Pennsylvania Constitution could not repeal the Crimes Code since that code did not exist until 1972, four years after the 1968 Constitution was adopted. ***See*** Act of December 6, 1972, P.L. 1482 No. 334. Thus, the Crimes Code

was not rendered invalid by the 1968 Pennsylvania Constitution. Appellant's issue is frivolous.

Appellant's next argument fares no better. Appellant contends that since the Pennsylvania Constitution does not explicitly provide legislative authority to adopt criminal statutes, the entire Crimes Code is unconstitutional. As mentioned, Appellant was not prosecuted under the Crimes Code; nonetheless, to the extent his argument pertains to crimes under the Motor Vehicle Code, his position is refuted by well-established Pennsylvania precedent.

While "it is a familiar doctrine that the federal government is one of enumerated powers, and Congress has no power except that which has been conferred upon it by the constitution, . . . . no such question arises when an act of the State Legislature is under consideration[.]" White, *Commentaries on the Constitution of Pennsylvania,* at 5. Rather, "[t]he Legislature possess all legislative power except such as is prohibited by express words or necessary implication." ***Lewis & Nelson's Appeal***, 67 Pa. 153, 165 (1870); ***Sharpless v. Mayor & Citizens of Philadelphia***, 21 Pa. 147, 160 (1853) ("The federal government can do nothing but what is authorized expressly or by clear implication; the state may do whatever is not prohibited."); *see also **Commonwealth v. Hartman***, 17 Pa. 118, 119 (1851) ("Congress can pass no laws but those which the constitution authorizes either expressly or by clear implication; while the Assembly has

jurisdiction of all subjects on which its legislation is not prohibited. The powers, not granted to the government of the Union, are withheld; but the state retains every attribute of sovereignty which is not taken away."). The cases cited by Appellant simply do not stand for the proposition that a state cannot enact criminal statutes without an express provision within its constitution as those decisions relate to the federal constitution and its limitation on federal power. **See** Appellant's brief at 5 (citing **Martin v. Hunter's Lessee**, 14 U.S. 304, 326 (1816); **United States v. Lopez**, 514 U.S. 549, 551-552 (1995)).

Pointedly, the Pennsylvania Constitution impliedly recognizes authorization for passing criminal laws in numerous clauses. In Article II, § 7, it provides, "No person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth." Pa. Const. Art. II, § 7. Further, the Declaration of Rights sets forth:

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.

Pa. Const. Art. I, § 9. Concomitantly, Article I, § 10 states,

No person shall, for any indictable offense, be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia, when in actual service, in time of war or public danger, or by leave of the court for oppression or misdemeanor in office. No person shall, for the same offense, be twice put in jeopardy of life or limb; nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured.

Other constitutional provisions, such as the prohibition against unlawful searches and seizures, Pa. Const. Art. I, § 8, the cruel punishment clause, Pa. Const. Art. I, § 13, the *habeas corpus* clause, Art. I, § 14, the prohibitions against both special criminal tribunals, Pa. Const. Art. I, § 15, and *ex post facto* legislation, Pa. Const. Art. I, § 17, all recognize the authority of a state government to enact criminal law. It would be absurd *ab initio* for these provisions to exist in the Pennsylvania Constitution if the legislature could not pass criminal legislation. Indeed, the Pennsylvania Constitution authorizes the Governor to pardon individuals for the commission of crimes and creates a Board of Pardons. Pa. Const. Art. IV, § 9. These provisions were not limited to individuals who committed crimes before 1968.

In sum, states are empowered with broad police powers to protect the health, safety, and welfare of its citizens. Among the powers every state government has is the power to enact statutory criminal law. According to Appellant's theory, the Commonwealth has no authority to pass any criminal statutory law since the Pennsylvania Constitution only provides general authority to draft legislation. Since nothing in the Pennsylvania Constitution

- 14 -

prohibits the Commonwealth from enacting criminal statutes, the enactment of the Pennsylvania Crimes Code and Motor Vehicle Code were valid exercises of power. *See **Nelson's Appeal***, *supra*; ***Sharpless***, *supra*; ***Hartman***, *supra*.

Appellant also claims that our Supreme Court violated the doctrine of separation of powers by promulgating rules of court, rules of criminal procedure, and evidence and that the legislature cannot delegate rule-making authority to the judiciary. The Pennsylvania Constitution has specifically authorized our Supreme Court to promulgate rules governing the practice, procedure, and conduct of all of the courts in the Commonwealth. Pa.Const. Art. V § 10(c);[7] *see also **Commonwealth v. McMullen***, 961 A.2d 842, 847 (Pa. 2008) ("T[he] [Supreme] Court retains exclusive rule-

_____

[7] The Pennsylvania Constitution, Article V § 10(c) provides, in relevant part, as follows:

> (c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. . . .

making authority to establish rules of procedure."). Hence, the legislature did not delegate rule-making authority, but the people of Pennsylvania, in voting to ratify the amendments to the 1874 Constitution, *i.e.*, the 1968 constitution, specifically authorized the Pennsylvania Supreme Court to craft rules governing court procedures. Since this practice does not violate a specific provision of the federal constitution, this delegation is not improper.

Instantly, it is apparent that Appellant misunderstands the doctrine of separation of powers. While no governmental branch "should exercise the functions exclusively committed to another branch[,]" **Commonwealth v. Melvin**, 103 A.3d 1, 14 (Pa.Super. 2014) (quoting **Sweeney v. Tucker**, 375 A.2d 698, 706 (Pa. 1977)), a constitutional violation does not automatically occur when one governmental branch exercises a power specifically delegated to it. Under Pennsylvania constitutional law, the legislature does not have the authority to pass purely procedural criminal rules. Thus, the Supreme Court's promulgation of such rules does not *per se* infringe upon the legislature's authority to pass statutory law. Importantly, nothing in the federal constitution specifically prohibits a state from delegating to its high court the authority to craft procedural or evidentiary rules.[8] Indeed, the Tenth Amendment provides that the powers not

_____

[8] We note that Pennsylvania's rules of evidence are largely a codification of long-standing Pennsylvania common law jurisprudence. Therefore, even if
*(Footnote Continued Next Page)*

- 16 -

delegated to the federal government and not specifically prohibited from the states by the Constitution are reserved to the people and the states. **_See_** U.S.Const. Am. X.

Appellant's reliance on the Republican Form of Government Clause, Supremacy Clause, and various other provisions within the federal constitution is misplaced. Nothing within the clauses cited by Appellant expressly or impliedly prohibits a state from authorizing its supreme court to adopt procedural and evidentiary rules. The Supremacy Clause does not prohibit citizens of a state from making or passing state constitutional law. Where the federal constitution prohibits specific state action, it sets forth the prohibition in clear "No State shall" language. U.S.Const. Art. I, § 10; U.S.Const. Am. XIV. Nowhere does the federal constitution provide that the citizens of a state do not have the power to create a state constitution that delegates the drafting of criminal procedural rules or evidentiary rules to the courts. While a state cannot pass a law that violates the federal constitution, the federal constitution has always allowed states broad authority to pass state constitutions and state law.

Indeed, early Pennsylvania case law recognized the power of a court to create rules even absent an express constitutional provision. **_Barry v. Randolph_**, 3 Binn. 277, 278 (Pa. 1810) (Chief Justice Tilghman writing,

_(Footnote Continued)_ ——————————

the rules of evidence were considered void, a consistent body of case law would fill the gap.

- 17 -

"Every court of record has an inherent power to make rules for the transaction of its business, provided such rules are not contradictory to the law of the land."); *Id*. (Justice Yeates opining, "courts must necessarily have the power of framing such rules, as they think best calculated to carry the laws into execution with convenience and despatch."); ***Vanatta v. Anderson***, 3 Binn. 416, 423 (Pa. 1811) (it is not denied that [the courts] have power from the nature of the constitution, to make rules for the relation of their practice."); ***Snyder v. Bauchman***, 8 Serg. & Rawle 336, 338-339 (Pa. 1822) ("Without this [rule-making] power it would be impossible for Courts of justice to dispatch the public business. Delays would be interminable, and delay not unfrequently is the object of one of the parties. Every Court, therefore, must have stated rules to go by, and they are the properest judges of their own rules of practice.").[9]

While the courts and legislature shared rule-making functions during this Commonwealth's early years, it is obvious that the separation of powers doctrine did not prohibit courts from enacting procedural rules. Further, besides Pennsylvania, numerous other states have either judicially decided or by constitution provided that procedural rule-making is exclusively a

---

[9] Dean Roscoe Pound penned an influential article in the early 20th century arguing that judicial rule-making, even absent express constitutional authorization, was not constitutionally prohibited by the separation of powers doctrine. **See** Roscoe Pound, *Regulation of Judicial Procedure by Rules of Court*, 10 Ill. L. Rev. 163 (1915).

function of the judiciary.[10]  Other states' courts and legislature share power over making such rules,[11] or the legislature has enacted law delegating such authority to the courts.[12]  For all the aforementioned reasons, Appellant's position fails.

The final challenge Appellant forwards with respect to subject matter jurisdiction is that he was prosecuted under criminal statutes that lack an enacting clause.  Appellant is incorrect.  Pursuant to 1 Pa.C.S. § 1101(a), all statutes are required to begin, "The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows."  The clause is required to appear "immediately after the preamble or the table of contents of the statute."

_____

[10]  *See e.g. R.E.W. Construction Co. v. District Court*, 88 Idaho 426 (1965); *Winberry v. Salisbury*, 5 N.J. 240 (1949); *Newell v. State*, 308 So.2d 71 (Miss. 1975); *Ammerman v. Hubbard Broadcasting, Inc.*, 551 P.2d 1354 (N.M. 1976); *People v. Cox*, 412 N.E. 2d 541 (Ill. 1980); *Jennings v. State*, 276 Ark. 217 (1982); *State v. Keith*, 325 N.W.2d 641 (Minn. 1982); Ariz. Const. Art. VI, § 5(5); Colo. Const. Art. VI, § 21; Del. Const. Art. IV, § 13(1); Hawaii Const. Art. 6, § 7; Ky. Const. § 116; Mich. Const. Art. VI, § 5; N.D. Const. Art. VI, § 3; W.V. Const. Art. VIII, § 3.

[11] Ala. Const. Art. VI, § 150; Alaska Const. Art. IV, § 15; Fla. Const. Art. V, § 2; La. Const. Art. V, § 5(A); Md. Const. Art. IV, § 18(a); Mo. Const. Art. V, § 5; Mont. Const. Art. VII, § 2(3); Neb. Const. Art. V, § 25; N.C. Const. Art. IV, § 13; Ohio Const. Art. IV, § 5(B); Okla. Const. Art. 7, § 5; S.C. Const. Art. V, § 4; S.D. Const. Art. V, § 12; Vt. Const. Chapter II, § 37; *see also* Va. Code § 8.01-3; *State ex rel. Frederick v. District Court*, 399 P.2d 583 (Wyo. 1965); *Bourne v. Atichison, Topeka & Sante Fe Ry.*, 497 P.2d 110 (Kan. 1972); *Neeley v. State*, 305 N.E.2d 434 (Ind. 1974); *Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564. (Iowa 1976).

[12] Me. Rev. Stat. Ann. Tit. 4, § 8; Nev. Rev. Stat. § 2.120(2); N.M. Stat. Ann. § 38-1-1; R.I. Gen. Laws § 8-6-2; Utah Code Ann. § 78A-3-103; Wash. Rev. Code Ann. § 2.04.190.

1 Pa.C.S. § 1101(a).

Appellant asserts that the Pennsylvania Crimes Code does not have the required enacting clause. Again, Appellant was not prosecuted under the Crimes Code. Moreover, although West Publishing Company omitted the enacting clause from its annotated edition of the Crimes Code and Motor Vehicle Code, our review of the official codification of the Pennsylvania Crimes Code enacted by the General Assembly in 1972 reveals the enacting clause immediately before the table of contents for Title 18. *See* Act of December 6, 1972, P.L. 1482 No. 334. Similarly, criminal legislation for the crimes charged under the Motor Vehicle Code provide, in the official codification of those laws, enacting clauses. *See* 1976, June 17, P.L. 162, No. 81, § 1; 1994, Dec. 27, P.L. 1337, No. 154, § 3; 2001, June 26, P.L. 734, No. 75, § 6; 2006, July 10, P.L. 1086, No. 113, § 4 (governing fleeing or attempting to elude police officer).[13]

To the extent Appellant's position forwarded below was premised upon the Commonwealth Court of Pennsylvania's discussion of the West Publishing Company's *Purdon's Pennsylvania Statutes* in ***In Re Appeal of Tenet Health Systems Bucks County, LLC***, 880 A.2d 721 (Pa.Cmwlth. 2005), it affords him no relief. That case involved an attorney's reliance upon a

---

[13] The official versions of these laws, with their respective enacting clauses, can be located via searching http://www.legis.state.pa.us/cfdocs/legis/CL/Public/cl_view.cfm. (last visited March 4, 2015).

misprint in *Purdon's Pennsylvania Statutes* that caused him to file an untimely tax assessment appeal. The relevant citation was to 72 P.S. § 5349(c). The trial court rejected counsel's request to file the appeal *nunc pro tunc.* In affirming the trial court's determination, the Commonwealth Court explained that *Pennsylvania Consolidated Statutes* are the official codifications that are enacted by the General Assembly and *Purdon's Pennsylvania Statutes* is the unofficial work product of West Publishing Company. **Id**. at 725.[14] The Court further elucidated, "The distinction between the official and unofficial codification of Pennsylvania's statutes can be seen in the form of citation." **Id**.

> [A] citation to " *1 Pa.C.S. § . . . ." is a citation to positive law in the form of an official code adopted by the General Assembly* and that "*1 Pa.C.S.A.* § . . . ." is the citation to the Purdon's annotated edition of that code, but that "7 P.S. § . . . ." is merely a citation to an unofficial codification of a private publisher which has no official counterpart. . . .

**Id**. (quoting William H. Clark, Jr., Introduction to the Pennsylvania Consolidated Statutes, Title 1, 7 (1995) (emphasis added by Commonwealth Court). Simply stated, *Pennsylvania Consolidated Statutes*, cited as Pa.C.S., is the official codification of statutory laws; *Purdon's Consolidated Statutes Annotated*, cited as Pa.C.S.A., is the annotated edition of the official codification; and *Purdon's Pennsylvania Statutes*, cited as P.S., is West

---

[14] Appellant incorrectly asserted below that the consolidated statutes were unofficial. It appears that he meant to allege that the annotated statutes were unofficial codifications of the pamphlet laws.

Publishing Company's own codification of legislation that has not been included in the official codification. In ***In Re Appeal of Tenet Health Systems Bucks County, LLC***, the Commonwealth Court concluded that the attorney's failure to recognize that "72 P.S. § 5349 is West Publishing Company's unofficial codification of Section 8 of the Assessment Law [was] a foundational error." ***Id***. at 726.

With that background in mind, we confront Appellant's contention herein and find it meritless. Unlike the attorney in ***In Re Appeal of Tenet Health Systems Bucks County, LLC***, the Commonwealth in the case *sub judice* did not cite to the unofficial statutory codification in the criminal informations. In fact, Appellant's position betrays his misunderstanding of our sister court's rationale. A review of the several criminal informations in this case reveals that the Commonwealth did not cite to *Purdon's Consolidated Statutes Annotated*, the annotated edition of the official code adopted by the General Assembly nor do the informations cite to *Purdon's Pennsylvania Statutes*. Further, any citation to the annotated edition would refer directly to sections assigned by the legislature in its official counterpart and not West Publishing Company. ***See id.*** (Pa.C.S.A. is citation to *Purdon's* annotated edition of the official code). Thus, Appellant's reliance below upon ***In Re Appeal of Tenet Health Systems Bucks County, LLC***, is unavailing. For all of the aforementioned reasons, Appellant's subject

matter jurisdiction claims are without any sound legal basis and are frivolous.

Appellant's next five issues relate to the effectiveness of counsel. "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa.Super. 2013) (*en banc*). The failure to meet any of these aspects of the ineffectiveness test results in the claim failing. *Id*.

Arguable merit exists when the factual statements are accurate and "could establish cause for relief." *Id*. at 707. Whether the "facts rise to the level of arguable merit is a legal determination." *Id*. In considering whether counsel acted reasonably, we look to "whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success." *Id*. "Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." *Id*. (citations omitted). Lastly, prejudice exists where "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id*. This probability is sufficient when it "undermines confidence in the outcome of the proceeding." *Id*.

Appellant's initial ineffective assistance of counsel claim is that preliminary hearing counsel was ineffective for failing to object to a purported leading question asked of Officer Lauver during that proceeding. He argues that the alleged improper questioning allowed the prosecution to inject false evidence to establish his fleeing and eluding charge. In his view, had counsel objected, the Commonwealth would have been unable to prove that he willfully refused to bring his car to a stop. Thus, Appellant maintains that the outcome of the preliminary hearing would have been different because the district court would have dismissed the fleeing count.

Initially, we note that Appellant's assertion that the relevant prejudice pertains to the outcome of the preliminary hearing is without legal support. The PCRA statute requires the prejudice to affect the adjudication of guilt and our case law has also recognized that the law applies to sentencing. While in certain contexts such as the waiver of a jury trial right, we do not look to the trial outcome, *Commonwealth v. Mallory*, 941 A.2d 686 (Pa. 2008), the same is not true in the preliminary hearing context. The distinction between the jury trial waiver scenario and a preliminary hearing is that the waiver proceeding affects the very manner in which an individual is tried. In contrast, a preliminary hearing only establishes whether *prima facie* evidence that a crime occurred and that the person charged committed it exist. The failure to establish a *prima facie* case does not preclude the Commonwealth from re-filing charges and beginning the process anew.

In **Commonwealth v. Lyons**, 568 A.2d 1266 (Pa.Super. 1989), no preliminary hearing was conducted due to the inability to locate the defendant. The Commonwealth received permission to file its criminal information absent the preliminary hearing. Lyons' subsequent motion to conduct such a hearing was denied. Following a non-jury trial, the court found the defendant guilty of robbery and conspiracy. During PCRA review, the defendant alleged that counsel was ineffective in failing to move to quash the information and preserving his issue regarding the lack of a preliminary hearing.

The panel opined that the absence of the preliminary hearing did not impair the truth-determining process at trial and that the defendant could not establish prejudice. It reasoned, "the case was tried and the evidence was submitted to the court which, as trier of the facts, found not only that the Commonwealth had established a prima facie case of guilt but that appellant's guilt had been proved beyond a reasonable doubt." **Id**. at 1268. The **Lyons** Court continued that any deficiency in the preliminary hearing was harmless and that Lyons had failed to show that "the absence of a preliminary hearing in any way undermined the truth determining process so as to render unreliable the trial court's finding of guilt." **Id**. at 1269.

Moreover, our Supreme Court, in the direct appeal context, has concluded that "once a defendant has gone to trial and has been found guilty of the crime or crimes charged, any defect in the preliminary hearing is

- 25 -

rendered immaterial." ***Commonwealth v. Sanchez***, 82 A.3d 943, 984 (Pa. 2013). It would be incongruous to make the prejudice analysis for purposes of PCRA review less stringent than that during direct review. Nonetheless, even assuming that for purposes of prejudice we look to the outcome of the preliminary hearing, Appellant's claim would fail as not only can he not establish prejudice, but his issue lacks arguable merit.

Our discussion above should not be read to suggest that ineffective assistance of counsel claims relative to a preliminary hearing are not cognizable under the PCRA. Although this Court reached such a result in ***Commonwealth v. Lassen***, 659 A.2d 999 (Pa.Super. 1995), the decisions relied on by that court, relative to cognizability, have been either expressly or impliedly overruled. ***See Commonwealth ex rel. Dadario v. Goldberg***, 773 A.2d 126 (Pa. 2001), and ***compare Lassen***, ***supra*** at 1007 (citing ***Commonwealth v. Tanner***, 600 A.2d 201 (Pa.Super. 1991);[15] ***Commonwealth v. Wolfe***, 580 A.2d 857 (Pa.Super. 1990), *abrogation recognized by **Commonwealth v. Watson***, 835 A.2d 786 (Pa.Super. 2003); ***Commonwealth v. Pitts***, 580 A.2d 352 (Pa.Super. 1990); ***Commonwealth v. Grier***, 599 A.2d 993 (Pa.Super. 1991). Each of these decisions is invalid, post-***Dadario***, to the extent they conclude ineffective

_____

[15] In ***Commownealth v. Prout***, 814 A.2d 693 (Pa.Super. 2002), this Court recognized that decisions akin to ***Commonwealth v. Tanner***, 600 A.2d 201 (Pa.Super. 1991), were invalid.

assistance of counsel claims are not cognizable under the PCRA. **See e.g.**
**Watson**, **supra**. Accordingly, **Lassen** is no longer sound, and we look to
the traditional ineffectiveness test and decide the issue on its merits.

First, we note that Appellant failed to ensure the transcript of the
preliminary hearing was made part of the certified record on appeal.
Despite this omission, the PCRA court has quoted directly from the transcript
the relevant question. The question is as follows:

> Prosecutor: When the vehicle stopped at the stoplight, was
> there anything else besides the stoplight that prevent the car
> from moving or was it just the stoplight?
>
> Officer Lauver: There was a vehicle facing east on Willow Street
> at Twelfth Street and the Defendant—because of the snow on
> the roadway, the Defendant would not have been able to go
> around and continue on Willow Street.

PCRA Court Opinion, 5/2/14, at 10 (quoting N.T., 5/13/10, at 16).

The PCRA court correctly found that the question was not leading. A
leading question suggests or provides the answer desired by putting words
in the witness's mouth. **Commonwealth v. Lambert**, 765 A.2d 306,
357 (Pa.Super. 2000). For example, had the prosecutor stated, "Isn't it true
that due to snow in the roadway and a vehicle in the area that the defendant
was forced to stop," the question would have been leading. Appellant's
assertion that the question was leading demonstrates a fundamental
misapprehension of the law. Counsel cannot be ineffective for failing to raise
a meritless objection.

We add that Appellant's position that, because the officer had not mentioned another vehicle blocking his travel in his incident report or affidavit of probable cause, the Commonwealth could not establish a *prima facie* case of fleeing, is also patently meritless. Failing to pull over after an officer activates his siren and lights, speeding away, and running through a stop sign is *prima facie* evidence of the crime in question. Appellant's claim is baseless.

Next, Appellant avers that trial counsel was ineffective for not seeking a continuance or seeking an additional suppression hearing where discovery materials were turned over in an untimely manner. In rambling fashion, Appellant attacks the Lebanon County District Attorney's and Public Defender's Office. It appears that Appellant's complaint pertains to untimely receipt of a video from Officer Lauver's dashboard camera and radio communications from Officer Lauver during the chase. According to Appellant, this evidence was exculpatory and impeaching **Brady v. Maryland**, 373 U.S. 83 (1963) evidence, which he could have successfully used at his suppression hearing to negate the probable cause to arrest his fleeing charge. Appellant maintains that Officer Lauver testified at trial that he activated his lights and then turned on his siren. In contrast, Officer Lauver had testified during the preliminary hearing and suppression hearing that he activated his lights and sirens simultaneously. This minor discrepancy is immaterial for purposes of Appellant's suppression hearing.

Officer Lauver viewed Appellant driving the wrong way on a one-way street. Hence, he had probable cause to effectuate a traffic stop. Appellant was also speeding and failed to stop at a stop sign. Since Officer Lauver had probable cause to stop Appellant for all of these violations, the stop was valid. Insofar as Appellant is not contesting his stop, no other argument is actually forwarded in his brief under this subsection, and we address the probable cause for his arrest for fleeing in disposing of his next claim.

In his third ineffectiveness challenge, Appellant contends that trial counsel was ineffective in choosing to contest the lawfulness of his stop rather than his arrest. Appellant submits that the Commonwealth only needed to establish reasonable suspicion to conduct the traffic stop, but that he was illegally arrested for fleeing immediately after he stopped his car. Appellant avers that because he stopped his vehicle forty-one seconds after Officer Lauver activated his lights and siren, the officer lacked probable cause to arrest him for fleeing.[16] He is mistaken.

Assuming *arguendo* that Appellant did stop his vehicle within forty-one seconds of the officer turning on his lights and siren, the fact does not *ipso facto* mean that he did not flee or elude the officer. Forty-one seconds while traveling at a high rate of speed is not an insignificant period. Indeed, the

---

[16] In Appellant's direct appeal brief, contained in the certified record, he averred that the stop occurred forty-three seconds after the officer turned on his siren. The trial testimony of the officer was also forty-three seconds. N.T., 6/7/11, at 52.

evidence, viewed in a light most favorable to the Commonwealth, establishes that Appellant only stopped his vehicle because a car and snow pile blocked his path. Probable cause for an arrest exists "where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Rushing*, 71 A.3d 939, 965 (Pa.Super. 2013), *reversed on other ground*, 99 A.3d 416 (Pa. 2014). Here, Officer Lauver had probable cause to arrest Appellant for fleeing when Appellant failed to pull over immediately after the officer activated his lights and sirens, and Appellant instead traveled at a high rate of speed and ran through a stop sign. Since Officer Lauver had probable cause to arrest Appellant for fleeing, counsel cannot be ineffective in electing not to challenge the lawfulness of the arrest.

Appellant also disputes trial counsel's decision not to present an expert witness to challenge the Commonwealth's BAC testing. Appellant submits that the Commonwealth failed to present evidence of a conversion factor, and it did not test his whole blood. Since Appellant is no longer serving a sentence for DUI, he is ineligible for relief on this claim.[17] We add that on direct appeal, Appellant claimed that the evidence was insufficient to convict him of DUI because only the supernatant of his blood was tested. This Court

---

[17] No expert was necessary to establish the DUI element of his fleeing charge. *Cf. Commonwealth v. Griffith*, 32 A.3d 1231, 1238 (Pa. 2011).

rejected that position based on the rationale of the trial court, which opined that the Commonwealth had presented a conversion factor. As the underlying conversion factor issue was previously litigated, Appellant's ineffectiveness claim would necessarily fail. ***Commonwealth v. Collins***, 888 A.2d 564, 573 (Pa. 2005) (holding that while "ineffectiveness claims are distinct' from those claims that are raised on direct appeal. . . .Ultimately, the claim may fail on the arguable merit or prejudice prong for the reasons discussed on direct appeal.").

Appellant's final ineffectiveness claim is based on trial counsel's failure to contest the absence of ***Miranda*** warnings prior to his field sobriety tests. Appellant argues that because he was under arrest for the fleeing charge and the officer used the field sobriety tests to discover incriminating evidence as to the DUI charges, the field sobriety tests were an interrogation and required ***Miranda*** warnings. To the extent this position pertains to his DUI crimes, Appellant is ineligible for relief. In addition, Appellant's BAC was over the legal limit; thus, even absent the field sobriety test evidence, the Commonwealth proved the DUI aspect of his fleeing charge.

In his penultimate issue, Appellant avers that he is serving an illegal sentence. Appellant initially contends that 42 Pa.C.S. § 9721 sets forth the sentencing alternative in Pennsylvania. Noting that it provides for "total confinement," he maintains that because the terms "imprisonment" and "total confinement" are different, we must presume the words have separate

meanings and his sentence of incarceration is illegal. Appellant's position is untenable. Total confinement and imprisonment are synonyms, as is the word incarceration, which is obvious from the context of § 9721, since it provides for probation, partial confinement, county intermediate punishment and state intermediate punishment. Black's Law Dictionary defines "confinement" as "[t]he act of imprisoning or restraining someone; the state of being imprisoned or restrained." Where there is no ambiguity in a term we apply its plain meaning. 1 Pa.C.S. § 1921(b). "Total confinement" is not ambiguous and includes imprisonment. *See also* 42 Pa.C.S. § 9762 (discussing total and partial confinement and plainly indicating that confinement includes incarceration). As Appellant's interpretation is at odds with numerous remaining provisions of the Sentencing Code, we do not employ such an absurd reading. 1 Pa.C.S. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."); 1 Pa.C.S. § 1922 (General Assembly does not intend absurd results and intends entire statute to be effective and certain).

Appellant also maintains that his sentence is illegal because Pennsylvania law requires a definite term of imprisonment. *See* 42 Pa.C.S. § 9721(e) ("All sentences of imprisonment imposed under this chapter shall be for a definite term."). He submits that his one to five year sentence is an

indefinite sentence that permitted the court to sentence him within a permissible range of sentences. While Appellant is correct that the court sentenced him within a permissible range of sentences, he is incorrect that he was sentenced illegally.

Under Appellant's logic, he could only be sentenced to a flat sentence. However, flat sentences are generally illegal, **Commonwealth v. Mitchell**, 986 A.2d 1241, 1244 (Pa.Super. 2009); **Commonwealth v. Cain**, 637 A.2d 656, 658 (Pa.Super. 1994), and Pennsylvania law requires a definite minimum and definite maximum term of incarceration for most crimes, with the minimum sentence being at most one-half the maximum. 42 Pa.C.S. § 9756; 42 Pa.C.S. § 9755(b); 42 Pa.C.S. § 9757. As noted previously, the legislature intends for entire statutes to be effective. Further, we construe our sentencing statutes or parts of those statutes in *pari materia*. 1 Pa.C.S. § 1932. The meaning of "definite" in the context of a prison sentence under 42 Pa.C.S. § 9721(e) means a set minimum and set maximum. It does not mean a flat fixed sentence.

Finally, as it relates to his sentencing issue, Appellant posits that his sentencing order does not indicate under what statutory authority he was sentenced. He alleges that this is a due process violation and renders his sentence illegal. First, due process sentencing claims are waivable. **See Commonwealth v. Hartz**, 532 A.2d 1139, 1142–1143 (Pa.Super. 1987) (*en banc*) (Cirillo, P.J., concurring) (collecting cases); **Commonwealth v.**

*Wallace*, 533 A.2d 1051 (Pa.Super. 1987). Although Appellant purports that his issue presents a non-waivable illegal sentencing claim, he cites no Pennsylvania authority that holds that the absence of a citation in a sentencing order renders the sentence invalid or presents a legality of sentence question.

Appellant's reliance on *Perkins v. Payton*, 369 F.2d 590, 592 (4th Cir. 1966), offers him no comfort. That case did not hold that a sentencing order must contain citations to statutory sentencing law. Here, under 42 Pa.C.S. § 9721 and 42 Pa.C.S. § 9756, the court had authority to impose a prison sentence. Further, since Appellant's fleeing crime was a third-degree felony, 75 Pa.C.S. § 3733(a.2)(2)(i), the court had statutory authority to impose up to a seven year maximum sentence. 18 Pa.C.S. § 106(b)(4). It is beyond cavil that the sentencing court had authority to impose the one to five year sentence herein.

We also find our Supreme Court's decision in *Commonwealth v. Walton*, 397 A.2d 1179 (Pa. 1979), germane. In *Walton*, the defendant fired a shotgun into a woman's face. The court imposed a nineteen year probationary sentence with the condition that he pay restitution of $25 per week for the entire probation period. The court imposed restitution under the Penal Code of 1939; specifically, § 5109. However, that section was repealed by the enactment of the Crimes Code. The defendant did not contest his sentence at the trial level. This Court held the restitution illegal.

Our Supreme Court reversed. It did so on the ground that, at the time, the trial court had sentencing authority under 19 P.S. § 1051, despite the fact that the sentencing court did not invoke that statute. The **Walton** Court concluded that the restitution requirement was not illegal and the issue was waived. **Cf. In re Melograne**, 812 A.2d 1164, 1167 (Pa. 2002) ("Claims relating to a tribunal's power are, unlike claims of subject matter jurisdiction, waivable."). Hence, failing to cite a statute does not automatically result in a sentence being illegal where the court otherwise had statutory authority to sentence the defendant. Since Appellant's claim is both waived, **see** 42 Pa.C.S. § 9544(b), and without merit, he is entitled to no relief.

The final issue Appellant presents is that he was deprived of due process because he was not afforded enough time to file a response to the Commonwealth's PCRA brief at the PCRA court level. Citing **Hamdi v. Rumsfeld**, 542 U.S. 507, 589 (2004), Appellant argues that the government did not proceed according to written constitutional and statutory provisions. Procedural due process at its core requires notice and an opportunity to be heard. **Fiore v. Bd. of Fin. & Revenue**, 633 A.2d 1111, 1114 (Pa. 1993) ("due process 'requires at a minimum that the deprivation of life, liberty or property by adjudication must be preceded by notice and opportunity for hearing appropriate to the nature of the case.' . . . we note that procedural due process requires more than notice and hearing, but

protects as well the right to an orderly proceeding adapted to the nature of the case.").

There is no procedural rule or statutory or constitutional requirement that Appellant be guaranteed an opportunity to file a response to a Commonwealth brief in a PCRA proceeding prior to the court disposing of the matter. Here, Appellant filed two lengthy and detailed briefs in support of his petition. In addition, despite none of his arguments raising any issues of genuine material fact, the court afforded him an evidentiary hearing. Appellant was afforded ample due process.

Order affirmed.

Judge Allen joins the opinion.

Judge Strassburger files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/28/2015